IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                                                       CR. No. 12-1240 JP

JOSE CALDERON-GONZALES,

    Defendant.

MEMORANDUM OPINION AND ORDER

    Defendant moves "to suppress all tangible evidence and statements obtained following an illegal warrantless search of Mr. Calderon-Gonzales' duffle bag, which took place on a Greyhound Bus during a layover in Albuquerque, New Mexico on or about May 5, 2012." MOTION TO SUPPRESS (Doc. No. 30) at 1, filed March 13, 2013.  Defendant makes four arguments in support of his MOTION TO SUPPRESS. First, Defendant argues that Drug Enforcement Agency (DEA) Agent Jarrell Perry violated Defendant's Fourth Amendment rights by stopping Defendant for investigative purposes without reasonable suspicion of criminal activity.  Second, Defendant argues that Perry violated Defendant's Fourth Amendment rights by conducting a warrantless search of Defendant's bag without reasonable suspicion of criminal activity.  Third, Defendant argues that he could not have voluntarily abandoned his bag because a Fourth Amendment violation preceded the "abandonment."  Fourth, Defendant argues that the evidence obtained through the warrantless search of his bag should be suppressed as fruit of the poisonous tree under the Fourth Amendment exclusionary rule.  Plaintiff United States of America (USA) contends that Perry's encounter with Defendant was actually a consensual encounter not subject to any Fourth Amendment protection.  The USA further contends that

Defendant voluntarily abandoned his bag and that Perry could, therefore, search it without violating the Fourth Amendment's admonition against unreasonable searches and seizures.

On May 1, 2013, the Court held a hearing on the MOTION TO SUPPRESS. Defendant was present at the hearing with his attorney, Benjamin Wilson. Assistant United States Attorney Shammara Henderson represented the USA. Both Perry and Defendant testified at the hearing. The Court will consider the briefs,[1] the testimony of Perry and Defendant, the admitted evidence, and the arguments of counsel made at the May 1, 2013 suppression hearing in deciding the MOTION TO SUPPRESS.

*A. Factual Background*

On May 5, 2012, at approximately 11:00 p.m., an eastbound Greyhound bus arrived at the Albuquerque terminal for a brief layover. Perry was on duty that night to conduct consensual encounters of bus passengers for drug interdiction purposes. Perry testified that he reviewed the passenger list[2] for this particular bus prior to boarding the bus to speak with passengers, but he

---

[1] The Court asked Defendant at the May 1, 2013 suppression hearing to file a reply brief which explains why Defendant believes that *United States v. Drayton*, 536 U.S. 194 (2002), a bus encounter case, is distinguishable from this case. The Court gave Defendant until noon on May 24, 2013 to file that reply brief, which he did. *See* ORDER EXTENDING DEADLINE FOR FILING REPLY TO AMENDED RESPONSE TO THE DEFENDANT'S MOTION TO SUPPRESS (Doc. No. 46), filed May 9, 2013; DEFENDANT'S REPLY AS ORDERED BY THE COURT REGARDING SUPPRESSION (Doc. No. 51) (Reply), filed May 24, 2013. In addition, the Court allowed the USA until June 18, 2013 to file a surreply. ORDER GRANTING UNITED STATES' UNOPPOSED MOTION FOR LEAVE TO FILE SURREPLY TO: [sic] DEFENDANT'S REPLY AS ORDERED BY THE COURT REGARDING SUPPRESSION (Doc. No. 56), filed June 6, 2013. The USA filed the surreply as ordered by the Court. UNITED STATES' SURREPLY TO DEFENDANT'S REPLY AS ORDERED BY THE COURT REGARDING SUPPRESSION (Doc. No. 58).

[2] Perry inspects passenger lists for travel patterns consistent with drug trafficking. The passenger lists, however, do not provide seating assignments, do not show if a ticket was purchased with cash, and do not indicate the use of false names.

did not remember anything specific about the passenger list. That evening, Perry dressed in civilian clothes and hid his firearm underneath his shirt.

After the bus arrived in Albuquerque, Perry watched the passengers de-board the bus. Perry did not recall where he was standing when the passengers de-boarded nor did he recall seeing Defendant de-board. Defendant testified that he was the last passenger to de-board after adjusting the position of his duffle bag in the overhead storage area to rest against the side of the storage area.

Perry stated that he typically boards the bus before the passengers re-board and looks at the luggage in the overhead storage area.[3] He then questions all of the passengers as they re-board the bus. Perry testified that in this case he did not hear a boarding announcement and he was still outside the bus when he saw the first two passengers, an unidentified lone woman and a man later identified as Defendant, re-board the bus. Perry did not remember exactly when the woman and Defendant re-boarded, but Perry believed it was approximately 11:30 p.m. According to Perry, the woman entered the bus first, followed by Defendant, and then Perry.

Perry observed Defendant stop halfway down the bus and face the overhead storage area. Perry testified that Defendant then reached up to unzip a dark bag with green trim (the duffle bag) in the overhead storage area and placed a hand in the bag. Perry further testified, contrary to Defendant's testimony, that the duffle bag was located between three or four other bags in that

---

[3] Perry also testified that he looks at luggage stored underneath the bus. Defendant submitted a motion to suppress from another federal criminal case which contains photographs of Perry entering a bus after the passengers had de-boarded and later looking at luggage stored underneath the bus. *See* DEFENDANT'S EXHIBIT FOR REPLY BRIEF (Doc. No. 52), filed May 28, 2013. The USA argues that the Court should not consider this other motion to suppress because it is irrelevant and because Defendant does not have standing to use that motion to suppress in this case. The Court agrees that this other motion to suppress is of limited relevance except to confirm Perry's testimony that it is his practice to look at luggage stored underneath buses.

overhead storage area.  The woman who boarded first had sat down one seat to the rear of where Defendant was standing.

    Defendant testified, however, that he began re-boarding the bus because he heard a boarding announcement and that the woman who re-boarded the bus with him had two young children with her.  Defendant testified that Perry was already on the bus when he re-boarded and that Perry was standing near his bag. Contrary to Perry's testimony and a photo of the duffle bag, Defendant testified that the bag was all black. Defendant also testified that his bag had been moved by someone after he had de-boarded the bus.  Defendant implied that Perry had already searched his bag before Defendant re-boarded the bus and that Perry, therefore, targeted him for questioning.

    Perry, on the other hand, stated that he approached Defendant first because Defendant was the first passenger Perry came into contact with.  Perry testified that he did not approach Defendant because he thought Defendant he was acting suspiciously. In fact, Perry said he did not know who Defendant was or what his travel itinerary was.  Perry did note that Defendant spoke very fast.

    Next, Perry testified that after he boarded the bus he stood in front of an aisle seat which was one seat forward of Defendant so as not to block the aisle.  Before speaking with Defendant, Perry began recording his conversation with Defendant.[4]  Defendant does not contest the accuracy of the recording or of the transcript of the recording.

    Perry, in a normal tone of voice, introduced himself to Defendant as a police officer and asked Defendant if he could speak with him.  Defendant consented to speaking with Perry. Perry's questions involved Defendant's origination, destination, and travel plans.  Perry also

---

[4] Perry records all of his passenger encounters.

4

asked Defendant for his bus ticket and identification, which Defendant provided. Perry then asked Defendant twice if he had any luggage on the bus. Both times, Defendant denied that he had luggage. Perry continued the encounter by asking Defendant if the bags in the overhead storage area were his. Defendant stated that all of the bags belonged to the woman who had re-boarded the bus with him. Perry turned to the woman and asked her which of the bags belonged to her. She indicated that all of the bags, except the duffle bag, were hers. Perry again specifically asked Defendant if the duffle bag was his. Defendant denied that the duffle bag belonged to him. Perry then asked Defendant, a couple of times, if he had any luggage, and if anything in the duffle bag belonged to him. Defendant denied, two more times, that he had any luggage and stated that the duffle bag was not his. In response to further questioning by Perry, Defendant indicated that he did not care what happened to the duffle bag and that he did not have any interest in that bag. Perry finally thanked Defendant and ended the encounter by telling Defendant to "[h]ave a good trip." Government's Ex. 1a at 5. Perry's recording ended at this point. The entire recorded encounter lasted about two minutes.

According to Perry, Defendant then walked four rows past him and sat down. Defendant contends, however, that after the recorded conversation with Perry ended, Perry patted him down while he was still on the bus and then announced that he was a police officer. Perry does not recall having patted down Defendant on the bus. Perry subsequently took the duffle bag from the overhead storage area and placed it on a seat to search it. Perry found bundles of methamphetamine and men's shirts with the same brand as the shirt Defendant was wearing.

Once Perry concluded the search of the duffle bag, Defendant stood up and asked Perry if he was free to leave the bus because he was feeling nauseous. Perry indicated that Defendant could leave the bus. After Defendant left the bus, Perry followed Defendant and arrested him.

Perry then transported Defendant to the DEA office during which time Perry and Defendant apparently conversed with each other. Defendant testified that while Perry was driving he told Defendant that he had discovered a second bus ticket belonging to Defendant when he searched the duffle bag on the bus. On the other hand, Perry testified that a search of the duffle bag at the DEA office revealed the second bus ticket.

Defendant was later read his *Miranda* rights at the DEA office and admitted to owning the duffle bag which contained two pounds of methamphetamine.

*B. Discussion*

   *1. What was the Nature of Perry's Encounter with Defendant?*

The first issue raised in the MOTION TO SUPPRESS is whether the encounter between Defendant and Perry which led Defendant to disclaim ownership of the duffle bag was consensual or investigative. There are "'three categories of police-citizen encounters: (1) consensual encounters which do not implicate the Fourth Amendment[;] (2) investigative detentions which are Fourth Amendment seizures of limited scope and duration and must be supported by a reasonable suspicion of criminal activity[;] and (3) arrests, the most intrusive of Fourth Amendment seizures and reasonable only if supported by probable cause.'" *United States v. Hill*, 199 F.3d 1143, 1147 (10th Cir. 1999), *cert. denied*, 531 U.S. 830 (2000) (quoting *United States v. Shareef*, 100 F.3d 1491, 1500 (10th Cir. 1996)). Police questioning alone does not constitute a seizure. *Florida v. Bostick*, 501 U.S. 429, 434 (1991). For example, a police officer can ask for a person's identification, request consent to search bags, and generally ask questions of a person even if the officer has no basis for suspecting a particular individual of any wrongdoing "as long as the police do not convey a message that compliance with their requests is required." *Id*. at 434-35. However, "'[a]ccusatory, persistent, and intrusive' questioning can

turn an otherwise voluntary encounter into a coercive one." *United States v. Little*, 60 F.3d 708, 712 (10th Cir. 1995). The United States Supreme Court "adhere[s] to the rule that, in order to determine whether a particular encounter constitutes a seizure, a court must consider all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter." [5] *Bostick*, 501 U.S. at 439.

In *United States v. Drayton*, 536 U.S. 194, 204 (2002), the United States Supreme Court determined that a random police encounter on a bus, conducted after passengers had boarded, was consensual when the police officers did not use any force, did not make any intimidating movements, did not use any overwhelming show of force, did not brandish weapons, did not block exits, did not make any threats, did not command anyone to do anything, and did not use an authoritative tone of voice. *Id*. Showing a badge, wearing a uniform, and being visibly armed, however, were factors with little weight in the analysis. *Id.* at 204-05. Other factors to consider include whether the police officer "advised the defendant he had the right to refuse consent" and "the particular location of the encounter." *United States v. Broomfield*, 201 F.3d 1270, 1274 (10th Cir.), *cert. denied*, 531 U.S. 830 (2000) (citing *Bostick*, 501 U.S. at 436-37). "No one factor is dispositive." *Id*. at 1274.

Defendant contends that *Drayton* is distinguishable from this case because Perry did not randomly approach Defendant as the police officers in *Drayton* did and because Perry boarded the bus prior to the passengers re-boarding, unlike in *Drayton* where the police officers boarded the bus after the passengers were aboard. Defendant asserts that Perry approached Defendant "as

---

[5] Generally, "[t]he asking of 'incriminating questions' is irrelevant to the totality of the circumstances surrounding the encounter." *United States v. Little*, 18 F.3d 1499, 1506 (10th Cir. 1994).

the *result* of an initial illegality, a warrantless pre-search of his passenger baggage by DEA Agent Perry." Reply at 2. In other words, Defendant maintains that, contrary to Perry's testimony, Perry searched Defendant's duffle bag prior to his encounter with Defendant and then targeted Defendant for questioning. Defendant contends that Perry's testimony at the suppression hearing was "self-impeaching" for several reasons. First, Defendant notes that Perry spoke in terms of what he "generally" or "usually" does and that the USA's proffer of Perry's testimony also used terms like "generally" or "usually." Second, Defendant observes that Perry on several occasions did not recall or remember certain aspects of the night in question. Third, Defendant contends that Perry's failure to recall hearing the re-boarding announcement indicates that Perry was already on the bus before Defendant and the unknown woman began re-boarding. Fourth, Defendant believes that Perry admitted to pre-searching the duffle bag when Perry was driving Defendant to the DEA office and told Defendant that he had found a second bus ticket in the duffle bag.

    Defendant's arguments that Perry's testimony was self-impeaching do not convince the Court that Perry's testimony is not credible. Perry's reference to his usual or customary practices is reasonable considering the hundreds of bus encounters he has conducted over the years and how difficult it may be to recall a specific encounter, especially, as in this case, a year has passed since the date of the arrest. For the same reason, it is reasonable to expect that Perry would not recall every detail of what occurred the night he encountered Defendant. Furthermore, many of the incidents which Defendant points out that Perry did not remember or recall are not relevant or important to the substantive issues at hand. For example, whether Perry remembered the passenger list in detail, whether Perry remembered where he was standing when the passengers de-boarded from the bus, whether Perry remembered seeing Defendant de-board the bus,

whether the woman boarding with Defendant had two children with her, whether Perry remembered exactly what time the bus reloaded although Perry was able to testify that the bus reloaded at approximately 11:30 p.m., whether Perry remembered Defendant's demeanor except that Defendant spoke fast, and whether Perry conversed extensively with Defendant while they were en route to the DEA office are not relevant to determining if there was a consensual encounter or a voluntary abandonment of the duffle bag.  Additionally, whether Perry patted down Defendant on or off the bus is irrelevant to the key substantive issues in the MOTION TO SUPPRESS which concern Perry's actions prior to any alleged pat down, i.e., whether the encounter leading up to Defendant's disclaimer of ownership of the duffle bag was consensual and whether Defendant had voluntarily abandoned the duffle bag. Moreover, Defendant's testimony that Perry found another bus ticket in the duffle bag while searching that bag on the bus does not necessarily mean that Perry pre-searched the bag; Perry could have discovered the second bus ticket while searching the duffle bag after the encounter with Defendant.  Also, the fact that Perry did not "hear" the boarding announcement could be attributed simply to his not paying attention.  In any event, Defendant did not present any evidence to show that a person already in the bus would not have been able to hear the boarding announcement.  Defendant's "self-impeachment" arguments simply do not discredit Perry's testimony that he searched the duffle bag only after questioning Defendant.

In addition to the alleged "self-impeachment" testimony, Defendant points out that Perry has a history of unreliable testimony and constitutional violations.  Defendant cites first to *United States v. Vaughn*, Cr. No. 11-1235 MCA (D.N.M.) in which the Honorable Chief United States District Court Judge M. Christina Armijo granted the defendant's motion to suppress.  Judge Armijo found that Perry's testimony at the suppression hearing was unreliable because it

was not based on his independent recollection.  Judge Armijo observed that Perry's testimony was based, instead, on subsequent notes he had written on the transcript of the audio recording of the encounter.  SECOND AMENDED MEMORANDUM OPINION AND ORDER (Doc. No. 98) at 12-14, filed Jan. 7, 2013.  Judge Armijo further determined that Perry coerced the defendant to consent to a pat down, in part, due to Perry's misrepresentation to the defendant of the reason for the pat down.  *Id*. at 22-24.

Defendant also cites to *United States of America v. Wellams*, Cr. No. 12-1393 MCA (D.N.M.).  In that case, Judge Armjio suppressed statements which the defendant made to Perry in response to two questions Perry posed to the defendant after Perry had arrested the defendant and prior to Perry having informed defendant of his *Miranda* rights.  MEMORANDUM OPINION AND ORDER (Doc. No. 68) at 16-18, filed April 30, 2013.  Perry's credibility was not questioned in that case.

Next, Defendant cites to *United States of America v. Freeman, Sr.*, Cr. No. 01-496 JP (D.N.M.).  In *Freeman, Sr.*, I granted a motion to suppress because Perry had searched a plastic bag within a suitcase without consent of the defendant and without reasonable suspicion or probable cause to believe that there was contraband in the plastic bag.  *See* MEMORANDUM OPINION AND ORDER (Doc. No. 38) at 11-12, filed Feb. 13, 2002.  Perry admitted that the defendant had consented only to a search of the suitcase and that the defendant did not give consent to search the plastic bag.  *Id.* at 7.  Again, Perry's credibility was not at issue.

In addition, Defendant cites to *State v. Rivera*, 2010-NMSC-046, 148 N.M. 659.  The New Mexico State Supreme Court in *Rivera* determined that Perry needed a search warrant prior to opening opaque bundles which bus employees had found when they unsealed a container

addressed to be delivered in Albuquerque. *Id*. at ¶¶ 26-29. This case did not challenge Perry's credibility.

Defendant also cites to *United States v. Rangel*, 519 F.3d 1258 (10th Cir. 2008). The Tenth Circuit Court of Appeals recognized, on a direct appeal of the defendant's conviction, that an issue of perjury existed "because of contradictions between various sworn statements by Agent Perry, and between those statements and testimony by the bus driver and a passenger, relating to who, if anyone, saw Mr. Rangel remove the bag containing the cocaine from a larger bag that he carried onto the bus in El Paso." *Id*. at 1259. The Tenth Circuit, however, did not resolve that issue, but instead abated the appeal to permit the district court to consider a 28 U.S.C. § 2255 motion addressing the defendant's concerns. *Id*. at 1265-66. The defendant subsequently pled before the district court could hear the perjury issue.

Finally, Defendant cites to *State v. Van Walton*, 2012 WL 1252980 (N.M. Ct. App.) (unpublished decision). In *Van Walton*, the New Mexico Court of Appeals affirmed the district court's ruling that Perry's encounter with the defendant was not consensual, and alternatively, that the defendant's consent to a search was involuntary and ambiguous. The New Mexico Court of Appeals concluded that "[o]n the evidence presented at the hearing, viewed in the light most favorable to the district court ruling, there was substantial evidence supporting a determination that Agent Perry detained Defendant with a show of authority and that a reasonable person in Defendant's position would not have believed he was free to leave." *Id.* at *3. This case did not raise any issue as to Perry's credibility. Of the six cases Defendant cites, only two dealt with Perry's credibility. Although somewhat disconcerting, these cases, in themselves, do not necessarily provide a sufficient reason for disbelieving Perry's testimony concerning relevant facts, in this particular case.

Defendant simply speculates that Perry pre-searched his bag.[6]  Even accepting Defendant's testimony that Perry was already onboard the bus and standing near Defendant's bag which had been moved, that testimony is insufficient proof that Perry, and not someone else, actually touched the bag.  On the other hand, one could also argue that Defendant's testimony was not entirely accurate. For instance, Defendant testified that Perry did not identify himself as a police officer until after Perry supposedly patted down Defendant.  This testimony directly contradicts the recorded conversation in which Perry stated at the beginning of the conversation that he was a police officer.  Interestingly, Defendant admitted that the recorded conversation was correct.  Defendant further testified that his bag was "[e]ntirely black" when in fact his bag was dark with green trim. Tr. 60:19-61:4, 65:8-11. Defendant has not convinced the Court that Perry used an illegal pre-search of Defendant's bag to direct his encounter instead of randomly encountering Defendant. Consequently, Defendant has not demonstrated that this case is distinguishable from *Drayton.*  The Court will, therefore, apply the *Drayton* factors to this case in deciding if there was a consensual encounter.

The evidence shows that Defendant voluntarily consented to speak with Perry. Moreover, Perry did not ask Defendant coercive questions.  Rather, Perry asked Defendant routine questions regarding his travel on the bus, asked for identification, and asked about ownership of the duffle bag as well as whether Defendant had any luggage. Perry did not use or show any force when speaking with Defendant prior to Defendant disclaiming ownership of the duffle bag nor did Perry make any intimidating movements, brandish a weapon, block any exits, threaten or command Defendant to do anything, or use an authoritative tone of voice in speaking

---

[6] Defendant notes that he asked the USA for bus surveillance tapes.  The USA apparently responded that it did not request the bus surveillance tapes from Greyhound which only keeps the tapes for a maximum of 10 to 15 days.  Reply at 3 n. 2 and 3.

to Defendant.  In addition, Perry actually advised Defendant that he was free to leave the bus, which Defendant did without any impediment.  Furthermore, the fact that the encounter occurred on a bus is not particularly supportive of Defendant's assertion that the encounter was an investigatory one because Perry did not block Defendant's exit nor did Perry ever inform Defendant that he could not leave the bus.  The totality of these circumstances would have communicated to a reasonable person that the person was free to decline to answer Perry's questions or to terminate the encounter any time before disclaiming ownership of the duffle bag.  Consequently, Perry's encounter with Defendant was consensual at least up to the time Defendant denied ownership of the duffle bag and Perry, therefore, did not violate Defendant's Fourth Amendment rights during that part of the encounter.

*2. Did Defendant Voluntarily Abandon the Duffle Bag?*

Having determined that the encounter between Defendant and Perry was consensual at least up to the point Defendant disclaimed ownership of the duffle bag, the Court next must decide whether Defendant's disclaimer of ownership of the duffle bag amounted to a voluntary abandonment of the bag.  "'A warrantless search and seizure of abandoned property is not unreasonable under the Fourth Amendment'" because voluntary abandonment of property constitutes a forfeiture of any expectation of privacy the person may have had in the property. *United States v. Austin*, 66 F.3d 1115, 1118 (10th Cir. 1995), *cert. denied*, 516 U.S. 1084 (1996) (quoting *United States v. Hernandez*, 7 F.3d 944, 947 (10th Cir. 1993); *United States v. Jones*, 707 F.2d 1169, 1172 (10th Cir.), *cert. denied*, 464 U.S. 859 (1983)).  "An abandonment must be voluntary, and an abandonment that results from a Fourth Amendment violation cannot be voluntary." *Id.* (citation omitted).  "The test for abandonment is whether an individual has retained any reasonable expectation of privacy in the object." *Jones*, 707 F.2d at 1172 (citation

omitted).  "This test of abandonment subsumes both a subjective and an objective component." *United States v. Garzon*, 119 F.3d 1446, 1449 (10th Cir. 1997).  A subjective intent to abandon is determined by findings of fact while "a determination of whether the defendant retained an objectively reasonable expectation of privacy in the property that society will recognize is a question of law...."  *Id*.  The Tenth Circuit has found property to be abandoned "where the defendant either (1) explicitly disclaimed an interest in the object, or (2) unambiguously engaged in physical conduct that constituted abandonment."  *Id*. at 1452.  Abandonment is not presumed and the party asserting abandonment must clearly show the abandonment.  *See, e.g., United States v. Robinson*, 430 F.2d 1141, 1143 (6th Cir. 1970).

   Here, Perry did not violate Defendant's Fourth Amendment rights prior to Defendant disclaiming ownership of the duffle bag because the encounter during that time was consensual and not subject to Fourth Amendment protection.  Defendant unambiguously disclaimed any interest or ownership in the duffle bag, i.e., Defendant's responses to Perry's questions denying any interest and ownership in the bag were explicit and unequivocal.  Defendant, therefore, subjectively intended to abandon the duffle bag.  In addition, as a matter of law, Defendant's statements rejecting ownership of the duffle bag negated an objectively reasonable expectation of privacy in the duffle bag which society would recognize.  For these reasons, the Court concludes that the United States of America has clearly shown that Defendant voluntarily abandoned the duffle bag.  Because Defendant voluntarily abandoned the duffle bag, Perry was free to search the bag without facing Fourth Amendment repercussions.  Having determined that Perry did not violate Defendant's Fourth Amendment rights in seizing and searching the duffle bag, the Court is compelled to deny the MOTION TO SUPPRESS.

IT IS ORDERED that the MOTION TO SUPPRESS (Doc. No. 30) is denied.

_____
SENIOR UNITED STATES DISTRICT COURT JUDGE